151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Artanada WHITE, Defendant-Appellant.
 No. 97-3923.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1998.
Decided July 15, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 3:97-CR-27RM. Robert L. Miller, Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. ILANA DIAMOND ROVNER, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Artanada White of one count of conspiracy to distribute cocaine base (crack) and two counts of distribution of cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1), 846. The district court sentenced White to a total of 420 months' imprisonment. White's counsel filed a notice of appeal but now seeks to withdraw under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he considers an appeal to be without merit or possibility of success. White was notified of the opportunity to file a response to the Anders motion pursuant to Circuit Rule 51(a), which he did. Because counsel's Anders brief is adequate on its face, we limit our review of the record to those issues raised in counsel's brief. United States v. Wagner, 103 F.3d 551, 553 (7th Cir.1996); United States v. Tabb, 125 F.3d 583, 584 (7th Cir.1997). We also take into consideration White's arguments in his Rule 51(a) response. Tabb, 125 F.3d at 584. We grant counsel's motion to withdraw and dismiss the appeal.
 
 
 2
 Trial testimony reveals that White was a street dealer of crack cocaine. Various cooperating witnesses testified about their participation with White in the distribution of crack throughout 1990-97. These witnesses stated that they received crack from White or his associates at various times and places and in quantities ranging from a quarter of an ounce up to two ounces. Two witnesses testified that they each purchased crack from White over thirty times. Other witnesses stated that they would page White to give him an order after which other people would deliver the crack. Some of the witnesses testified that they sold crack for White. Finally, an undercover police officer and an informant testified that they made two undercover crack buys from White.
 
 
 3
 In his Anders brief, counsel identifies eight potential appellate issues that would be frivolous. White raises two additional potential issues for appeal. We address them in turn.
 
 
 4
 First, counsel and White both explore the possibility that the district court erred by denying White's motion for judgment of acquittal on the conspiracy charge. See Fed.R.Crim.P. 29(a). Counsel also maintains that there was insufficient evidence to sustain the jury's verdict of guilty beyond a reasonable doubt on the conspiracy charge. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Both potential arguments are based on the contention that the evidence at trial merely established that the witnesses and White had a series of buyer-seller sales agreements, and thus, White was not involved in a conspiracy.
 
 
 5
 Looking to the specific facts of this case in order to determine whether White's drug transactions were merely buyer-seller agreements, we conclude that White was involved in a drug conspiracy. The district court and the jury heard and weighed testimony from several witnesses about the numerous crack transactions and agreements during a seven-year period in which White was their crack supplier. Over this seven-year period White sold over 18 kilograms of crack. Numerous individuals testified that they sold or bought crack from White on a continuing basis. White's sources of crack were also identified, including a source in Michigan, which he used repeatedly throughout the time period. From the amount of drugs involved, White's continued interactions with the same purchasers of crack, and his consistent use of the same crack suppliers, his conduct involved more than isolated buyer-seller drug transactions. See United States v. Fort, 998 F.2d 542, 547 (7th Cir.1993). Viewing the trial testimony in a light most favorable to the prosecution, we conclude that there is sufficient evidence that White's drug sales were more than individual buyer-seller agreements and any challenge to the sufficiency of the evidence would be frivolous. Accordingly, any challenge to the district court's refusal to grant White's Rule 29(a) motion is also frivolous. See United States v. Draves, 103 F.3d 1328, 1332 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997).
 
 
 6
 Next, counsel presents the potential argument that the proof established at trial differed from the crimes alleged in the indictment. Counsel suggests that the variance between the indictment and the proof at trial could conceivably require reversal because the evidence showed multiple conspiracies rather than a single conspiracy. See United States v. Blanding, 53 F.3d 773, 781 (7th Cir.1995) (variances are disregarded unless they prejudice the defendant). There was no proof at trial of separate conspiracies. In any event, the variance in the evidence would be harmless in light of the ample evidence of White's involvement and interactions of buying and selling crack in the charged conspiracy. United States v. Adames, 56 F.3d 737, 743 (7th Cir.1995).
 
 
 7
 In his Anders brief, counsel asserts two possible grounds for appeal based on "erroneous" jury instructions. First, counsel asserts that the district court's jury instruction describing the amount of crack the government must prove was a misstatement of law. The jury instruction stated:
 
 
 8
 The government must prove that the defendant distributed and/or possessed a "measurable amount" of the controlled substance, but need not prove the amount alleged in the indictment to sustain a conviction.
 
 
 9
 Because the quantity of drugs involved is not a substantive element of the drug offense, but is a sentencing issue, describing the amount of drugs involved as a "measurable amount" is a correct statement of law. See United States v. Trujillo, 959 F.2d 1377, 1381 (7th Cir.1992). Second, counsel asserts that the district court erred by giving the following instruction:
 
 
 10
 You may, but are not required to, find that a tacit understanding of the usual business arrangements through a long course of conduct between the parties is sufficient to constitute an agreement.
 
 
 11
 Counsel suggests that the instruction was not applicable to the evidence presented at trial because there was never a "long course of conduct" between any of the individuals involved in the conspiracy. But trial testimony indicates that at least two individuals purchased crack from White over thirty times and that other individuals worked for White over the seven-year period. Therefore, the instruction was properly given.
 
 
 12
 Counsel next maintains that the district court erred in admitting a statement into evidence because it was a combination of hearsay and opinion testimony. Specifically, the government asked one of its witnesses, a police officer, why perpetrators in drug transactions commonly use older vehicles. Over defendant's objection, the district court allowed the police testimony which indicated that drug dealers use older cars during drug transactions because the cars blend into the surroundings better than newer, expensive cars and are not worth enough to expose the perpetrators to seizure under state law. The district court concluded and we agree that the police officer's expertise allowed for his expert testimony regarding the vehicle. Because we have consistently approved of qualified law enforcement officers giving expert testimony on narcotics trafficking if it is helpful to the jury's understanding of the case, any challenge to the police officer's statement on appeal would be frivolous. United States v. Navarro, 90 F.3d 1245, 1260-61 (7th Cir.1996).
 
 
 13
 Next, counsel asserts as a possible argument that the sentencing court erred in admitting the expert testimony of a detective with the Indiana State Police concerning the amount of drugs involved because an insufficient foundation established the witness as an expert. Counsel also suggests and White contends in his Rule 51(a) response that the police detective was wrongfully allowed to give hearsay testimony. The sentencing court may consider a wide range of evidence, including hearsay, which may not be admissible at trial. United States v. Barnes, 117 F.3d 328, 337 (7th Cir.1997). Indeed, it well-established that the ordinary rules of evidence do not apply to sentencing hearings. United States v. Pippen, 115 F.3d 422, 425 (7th Cir.1997). Therefore, any such argument on appeal would be frivolous.
 
 
 14
 In his Rule 51(a) response, White asserts as a possible ground for appeal that the trial court erred by not giving a more specific jury instruction about immunized witnesses and paid informants. White fails to explain, however, why the instruction was inadequate. The instruction read:
 
 
 15
 You have heard testimony from witnesses who received immunity; that is, a promise from the government that any testimony or other information the witness provided would not be used against the witness in a criminal case. You also have heard testimony that witnesses have received or expect to receive benefits from the government in connection with this case. You may give the testimony of such witnesses such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.
 
 
 16
 The district court modeled its jury instruction by combining Seventh Circuit Pattern Jury Instructions Numbers 3.19 and 3.20, both of which have been approved by this court. See, e.g., United States v. Akinrinade, 61 F.3d 1279, 1287 (7th Cir.1995); United States v. Lawrence, 934 F.2d 868, 872-83 (7th Cir.1991). In addition, White did not object to the immunity instruction given by the district court, forfeiting this argument on appeal and the district court did not plainly err in its determination. Fed.R.Crim.P. 30; United States v. Davis, 121 F.3d 335, 337-38 (7th Cir.1997). Therefore, any appellate argument that the jury instruction was not specific would be frivolous.
 
 
 17
 Last, White mentions that his appellate counsel was constitutionally ineffective, recognizing that such claims are typically reviewed in 28 U.S.C. § 2255 motions. Indeed, ineffective assistance of counsel claims generally are not reviewed on direct appeal. United States v. Garrett, 90 F.3d 210, 214 (7th Cir.1996). However, this court will take jurisdiction of an ineffective assistance of counsel claim if the defendant's appellate attorney is not the same as his trial attorney and the claim relies on the trial record alone. United States v. Barnes, 83 F.3d 934, 939 (7th Cir .), cert. denied, 117 S.Ct. 156 (1996). Because White's trial and appellate counsel are the same, this potential issue is not appropriate for direct appeal.
 
 
 18
 We GRANT counsel's motion to withdraw and DISMISS the appeal as frivolous.